**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BETTY AYTON, as personal representative of the Estate of Kenneth Ayton, Jr., deceased,**

        **Plaintiff,**

**-vs-**          **Case No. 6:10-cv-1930-Orl-28GJK**

**ORANGE COUNTY SHERIFF DEPARTMENT,**

        **Defendant.**

## ORDER

On June 17, 2009, Kenneth Ayton Jr. ("Ayton") was shot and killed by two Orange County sheriff's deputies. This suit against the Orange County Sheriff Department ("Defendant") has been brought by the personal representative of Ayton's estate ("Plaintiff") pursuant to 42 U.S.C. § 1983. In her Complaint (Doc. 38),[1] Plaintiff alleges that in shooting and killing Ayton, the deputies used excessive force in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution, and Plaintiff alleges that Defendant is liable for the officers' conduct. Plaintiff also brings state law claims of battery and negligence as well as a claim under the Florida Wrongful Death Act.[2]

---

[1] The Complaint as initially filed (Doc. 1) was missing several pages, and upon Order of the Court (Doc. 37) the Plaintiff filed a complete copy of it (Doc. 38).

[2] §§ 768.16-.26, Fla. Stat.

The case is now before the Court on the Motion for Summary Judgment filed by the Defendant, (Doc. 33), Plaintiff's Response thereto (Doc. 34), and Defendant's Reply (Doc. 35). Having considered the parties' submissions and applicable law, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's lone federal claim, and the three remaining claims—all of which arise solely under state law—will be dismissed without prejudice to Plaintiff to refile them in state court.

## I.  Background

Ayton was shot and killed while driving a car in a parking lot during an attempted controlled purchase of heroin by the street-level drug unit of the Defendant. Prior to the incident, a confidential informant had told one of Defendant's deputies that Ayton was likely armed with a gun. When unmarked law enforcement vehicles tried to box in Ayton's vehicle, Ayton attempted to evade them. (See Compl. at 4). The parties dispute the exact course of events that then ensued. Defendant claims that before Ayton was shot, Ayton reached down toward the floor of the car as if he were grabbing a weapon and that the deputies feared that he intended to shoot them; Plaintiff maintains that the deputies lacked a reasonable basis for any such fear.

Plaintiff filed this lawsuit on December 23, 2010. In the Complaint, Plaintiff brings state law claims of battery (Count I), wrongful death (Count II), and negligent training and supervision (Count IV). She also brings a fourth claim—the claim on which the subject matter jurisdiction of this Court is premised—of excessive force in violation of the Fourth Amendment (Count III). Defendant's motion for summary judgment (Doc. 33) is ripe for ruling.

## II.  Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.'  Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

## III.  Discussion

### A.  Federal Claim (Count III)

The only federal claim brought by Plaintiff is Count III, in which Plaintiff asserts, pursuant to 42 U.S.C. § 1983, that the deputies used excessive force in violation of the Fourth Amendment and that this use of excessive force was the result of a municipal custom

and practice. Plaintiff alleges in the Complaint that Defendant had a custom of allowing deputies to engage in excessive force and failed to properly train them. However, Plaintiff has not presented evidence that supports her municipal policy claim, and therefore Defendant is entitled to summary judgment on Count III.

The doctrine of respondeat superior does not apply in actions under § 1983, and a municipality may only be held liable when the injury caused was a result of municipal policy or custom. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978). Moreover, "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "To establish a [municipality]'s deliberate indifference, 'a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).

In its summary judgment motion, Defendant argues that there is no record evidence establishing a custom or policy of allowing excessive force, a lack of training, or an obvious need for better or different training. In support of the motion, Defendant has submitted evidence regarding the training that is required of its law enforcement officers and evidence of its policies regarding use of force. (See Exs. 4 & 5 to Def.'s Mot.). Defendant also notes that Plaintiff has not identified any similar prior incidents involving inappropriate use of deadly force by deputies or any other basis for a finding of "deliberate indifference" to a need for

more training on the use of force.

Plaintiff argues in her Response that Defendant had an "unofficial policy of exonerating its deputies that are accused of use of force." (Doc. 34 at 15). The only evidence that Plaintiff has presented in attempted support of this contention are Professional Standards History Reports for the two deputies involved in the shooting of Ayton. (Exs. 10 & 14 to Pl.'s Summ. J. Resp.). Plaintiff argues that "[i]n each instance the Defendant's Professional Standards Division exonerated these deputies" and that the deputies "were embolden[ed] by the fact that the Defendant has an unofficial policy and custom of finding a way to justify its deputies['] excessive use of force." (Doc. 34 at 15). However, this evidence does not support a finding of municipal liability.

As another district court has explained, "[a] list of complaints against police officers, without more, is insufficient to create an issue of fact regarding [a municipality's] policy of inadequately investigating or disciplining its police officers. Rather, the Plaintiff must present at least some evidence from which a reasonable jury could infer that the complaints were meritorious." Simms v. City & Cnty. of Honolulu, Civ. No. 06-00669 HG-LEK, 2008 WL 3349069, at *8 (D. Haw. Aug. 12, 2008); accord Strauss v. City of Chicago, 760 F.2d 765, 769 (7th Cir. 1985) (noting that "the number of complaints filed, without more, indicates nothing" and that "[p]eople may file a complaint for many reasons, or for no reason at all").

The records submitted by Plaintiff fall woefully short of establishing a policy of ratification or of deliberate indifference. The reports for each of the involved deputies merely list the date an alleged incident occurred and that the deputy was exonerated. There is nothing in these records from which the Court or a jury could conclude that any of the

complaints had merit; thus it cannot be found that Defendant's internal investigation procedures were inadequate or that they demonstrate deliberate indifference. In the absence of any other evidence to support the municipal policy claim, Count III fails.

### B.  State Law Claims (Counts I, II, and IV)

Plaintiff's three remaining claims are state law claims. In light of the Court's disposition of the Plaintiff's federal claim—the only claim over which it has original jurisdiction—the Court declines to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3). These claims will be dismissed without prejudice so that Plaintiff may, if she chooses, pursue them in state court.

### IV.  Conclusion

1. The Motion for Summary Judgment (Doc. 33) filed by Defendant is **GRANTED** as to Count III of the Complaint.

2. The Motion for Summary Judgment (Doc. 33) filed by Defendant is **DENIED without prejudice** as to Plaintiff's remaining state law claims. Pursuant to 28 U.S.C. § 1367(c), Plaintiff's state law claims—Counts I, II, and IV—are hereby **DISMISSED without prejudice** to Plaintiff pursuing them in state court. As set forth in 28 U.S.C. § 1367(d), the period of limitations is tolled for a period of thirty days after this dismissal unless Florida law provides for a longer tolling period.

3. Defendant's Motion in Limine (Doc. 39) is **DENIED as moot**.

4. The Clerk is directed to enter a judgment providing that Plaintiff shall take nothing from Defendant on the federal claim in Count III of the Complaint and that her state law

claims have been dismissed without prejudice.  Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 3rd day of October, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record